UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GERALD J. SILVA,                          :
    Plaintiff,                        :          CASE NO. 3:18-CV-1770 (MPS)
                                       :
    v.                                :
                                         :
D.K. WILLIAMS,                            :
    Defendant.                        :          February 22, 2019

---

### INITIAL REVIEW ORDER

On October 26, 2018, the plaintiff, Gerald J. Silva, a *pro se* inmate currently confined at the Federal Correctional Institution in Danbury ("FCI Danbury"), Connecticut, brought a civil rights action under *Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against the warden of FCI Danbury, D.K. Williams. Compl. (ECF No. 1) at 1-2. The plaintiff seeks monetary and injunctive relief against the defendant for "garnishing inmates' wages" and "price gouging" items in the prison commissary. *Id.* at 5-6. For the following reasons, the complaint is dismissed.

I.     Standard of Review

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

[C]ourt to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic*, 550 U.S. at 556). Nevertheless,

it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and

interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of*

*America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*,

470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d

Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.  Factual Allegations

According to the plaintiff, the staff at FCI Danbury, under the administration of

the defendant, "have been garnishing inmates' wages reportedly for the purpose of

balancing [the facility's] budget." Compl. ¶ 3. Inmates do not know the amount of

payment they will receive until the end of each pay period. *Id.* at ¶ 4. As a result, they

are unable to plan their living situations at FCI Danbury and are often unable to purchase

necessary items through the commissary. *Id.* at ¶¶ 5-6. The practice of garnishing

inmate wages at FCI Danbury has been ongoing since 2015, but it has become "more

persistent and egregious over the past year." *Id.* at ¶ 7. Many inmates have voiced their

concerns about the situation, but they fear reprisal if they file suit in the courts. *Id.* at ¶ 8.

Inmates have also alleged that the defendant and her staff have engaged in "illegal price

[gouging]" of products in the commissary. *Id.* at ¶ 11. For example, an MP3 player

which costs $88.90 in the commissary retails for only $12.00 outside the facility. *Id.*

III.    Analysis

The plaintiff brings this action against the defendant in her individual and official capacities under *Bivens*, 403 U.S. 388.  Compl. at 2.  He requests that this lawsuit be designated as a class action for all inmates at FCI Danbury who have been affected by the garnishing of wages and/or the "price gouging" of items in the commissary.  *See id.* at ¶¶ 9, 11.  The case must be dismissed because plaintiff fails to allege facts showing standing, and he also does not state a plausible constitutional claim of "price gouging."

First, the plaintiff fails to establish standing to bring suit because he never alleges that he suffered any cognizable injury as a result of the defendant's conduct.  He alleges that the defendant and her staff "have been garnishing inmates' wages," but he never alleges that he was one of those inmates.  Nor does he allege that he purchased any products at the commissary or was otherwise a victim of "price gouging."

Article III of the United States Constitution "gives the federal courts jurisdiction over only 'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process."  *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990).  In order to establish standing under Article III, the plaintiff must show "(1) an injury in fact, (2) a causal connection between that injury and the complained-of-conduct, and (3) a likelihood that the injury will be redressed by a favorable decision."  *Cohen v. Rosicki, Rosicki & Assocs. P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992)).

The plaintiff fails the first requirement in this case because he fails to allege that he, himself, suffered any injury in fact.  The Court cannot discern from the allegations whether the plaintiff is seeking to bring this case only on behalf of other inmates at FCI

3

Danbury or as a result of his own injury.  Thus, the complaint fails to demonstrate the plaintiff's standing and must be dismissed for lack of jurisdiction.

Second, with respect to the plaintiff's allegation that the defendant and her staff are "price gouging" items in the commissary, he has failed to state a plausible claim. Courts in this Circuit have held that "prisoners have no constitutional right to access a commissary." *Montalvo v. Lamy*, 139 F. Supp. 3d 597, 606 (W.D.N.Y. 2015); *see also Torres v. Droun*, No. 3:01-CV-1844 (DJS) (TPS), 2004 WL 721729, at *7 (D. Conn. Mar. 30, 2004) ("plaintiff has no constitutional right to purchase items from the commissary or outside vendors").  Therefore, even if the plaintiff had standing, his claim regarding inmates' ability to purchase items through the commissary is not cognizable.

Nonetheless, the Court will dismiss the case without prejudice and permit plaintiff to file an amended complaint.  In particular, the Court finds that if the plaintiff can allege facts showing that he has standing, his claim under *Bivens* based on the "garnishing [of] inmates' wages" may state a claim for violation of a constitutional right.  *Bivens* authorizes claims for damages against federal officials in their individual capacities for damages only where the conduct is found to violate the claimant's constitutional rights. *Dunn v. U.S. Federal Bureau of Prisons*, No. 3:03-CV-1928 (JBA), 2006 WL 695805, at *4 (D. Conn. Mar. 20, 2006) (citing *Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981)); *see also M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013) (*Bivens* claim limited to alleged constitutional violations).

It is well established that "'[t]he Constitution of the United States does not create a property or liberty interest in prison employment.'"  *Campbell v. Quiros*, No. 3:17-CV-946 (CSH), 2018 WL 888723, at *9 (D. Conn. Feb. 13, 2018) (quoting *Richard v.*

*Fischer*, 38 F. Supp. 3d 340, 352 (W.D.N.Y. 2014)).  Accordingly, the plaintiff's

property rights, in this case earned wages, must stem from an independent source of law

(i.e. federal statute or regulation).  *See Onwuazombe v. Dodrill*, No. 07-CIV-873 (DLC),

2008 WL 1758641, at *3 (S.D.N.Y. Apr. 16, 2008).  In order to state a deprivation of a

property interest, the plaintiff "must have more than a unilateral expectation; [h]e must,

instead, have a legitimate claim of entitlement" to those wages.  *Id.* (quoting *Bd. Of

Regents v. Roth*, 408 U.S. 564, 577 (1972)).  "A court will find there to be a property

interest if the relevant statutes and regulations 'meaningfully channel [] official discretion

by mandating a defined administrative outcome.'"  *Id.* (quoting *Sealed v. Sealed*, 332

F.3d 51, 56 (2d Cir. 2003)).  "Where an administrative scheme authorizes a benefit but

does not create an entitlement to it, then no protectable property right has been created."

*Id.* (citing *Sealed*, 3332 F.3d at 56).

It is clear that federal prisoners have no entitlement to continued employment

with the Federal Prison Industries, Inc. ("UNICOR") program.[1]  *See Johnson v. Rowley*,

569 F.3d 40, 44 (2d Cir. 2009) (holding that "a federal prisoner has no protected property

interest in a UNICOR job assignment.").  Nor is the Court aware of authority suggesting

a federal inmate has a property interest in a particular rate of pay associated with his job

assignment.  But the plaintiff here claims entitlement simply to payment of wages for

work *already* performed, which clearly differs in kind than entitlement to continued

employment at a particular rate of pay.  Indeed, the Second Circuit has found that, under

New York laws and regulations for state prisoners, statutory authority "provid[ing] for

---

[1] Federal Prison Industries, Inc. ("UNICOR") is a self-sustaining government corporation that provides voluntary work opportunities for federal prison inmates.  *Onwuazombe*, 2008 WL 1758641, at *1.

the payment of wages based on work performed, and . . . longstanding policy of paying

inmates for their labor creates an entitlement to these earnings" for purposes of a

constitutional due process claim. *Allen v. Cuomo*, 100 F.3d 253, 261 (2d Cir. 1996). In

*Allen*, the relevant state statute provided that inmates "may receive compensation for

work performed during his or her imprisonment" and that "[a]ny compensation paid to an

inmate under this article shall be based on the work performed by such inmate." *Id.*

(citing N.Y. Correct. Law § 187).

The Circuit has not specifically addressed whether federal law or regulations

create a property interest in withheld wages for prisoners in the custody of the BOP.

Nonetheless, the Court's survey of BOP regulations suggest that they may create such an

entitlement. For instance, the BOP regulations explicitly provide that "[i]t is the *policy* of

[Federal Prison Industries] to provide compensation to FPI inmate workers through

various conditions of pay and benefits," unless otherwise provided. *See* 28 C.F.R. §

345.50 (emphasis added). Where a federal inmate believes pay has been erroneously

withheld, the regulations provide that inmates must bring their claims within a one-year

statutory claims period. *See* 28 C.F.R. § 345.66. And finally,"[f]unds due a deceased

inmate for work performed and not yet paid *shall*" be paid to the inmate's estate or in

accordance with state law. *See* 28 C.F.R. § 545.30 (emphasis added). Although not as

explicit as those in *Allen*, the BOP regulations do arguably create an entitlement that

inmates be paid for work actually performed—even after they are deceased—and thus

federal inmates have a property interest in those wages. 100 F.3d 253, 261 (holding that

state inmate had property interest in earned wages, but not prompt payment of those

wages).

Of course, this is not to say that *any* withholding of inmate wages by BOP necessarily implicates a constitutional interest. Other Circuits concluding that federal inmates have no property interest in their earned wages have reasoned that a perverse system would result where the BOP was "constitutionally prohibited from withholding . . . wages . . . on the one hand, free to terminate employment and thereby withhold all wages on the other." *Nutall v. Maye*, 515 F. App'x 252, 254 (5th Cir. 2012); *see James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989) (no due process violation from withholding fifty percent of inmate wages for financial obligations where inmates had the "choice of assigning one-half of their prior savings or losing their Federal Prison Industries job assignments without any violation of their constitutional rights occurring."). But the BOP's withholdings in those cases involved restitution and other obligations under the Inmate Financial Responsibility Program, which are explicitly authorized by the regulations and thus fall within the BOP's discretion. *See, e.g.*, 28 C.F.R. § 545.11(b)(2) ("Inmates assigned grades 1 through 4 in UNICOR ordinarily will be expected to allot not less than 50% of their monthly pay to the payment process."). Here, the Court has not been able to identify any regulation that permits the BOP to withhold earned wages "for the purpose of balancing F.C.I. Danbury's budget." Compl. ¶ 3. In other words, absent a regulation or statute permitting withholding of already earned wages to balance the budget, it appears that BOP officials do not have meaningful discretion in paying federal inmates wages already earned. Accordingly, because it would not be futile, the Court will allow plaintiff to file an amended complaint.

**ORDERS**

The instant action is dismissed for failure to state a claim under 28 U.S.C. §

1915A.  The complaint is dismissed without prejudice and the Clerk is directed to close

this case.  Nonetheless, within **thirty days** of this order, the plaintiff may file an amended

complaint in which he attempts to address the defects identified in this ruling or

otherwise to plead a cognizable claim.  In particular, plaintiff may replead his claim

under Bivens for the "garnishing" of his earned wages while employed at FCI Danbury,

as well as any other cognizable claim he deems necessary.  Failure to file an amended

complaint by the deadline will result in dismissal of the case.


It is so ordered.

Dated at Hartford, Connecticut this 22nd day of February 2019.


_____/s/_____
Michael P. Shea
United States District Judge